HENRY S. FRIEDMAN
Assistant Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

ELISE S. FELDMAN (MA Bar No. 563187)
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Telephone: 415-744-6470
Facsimile:  415-744-6476
E-mail:  Elise.Feldman@usdoj.gov

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

SYDNEY SPECTOR
Assistant United States Attorney
300 Ala Moana Boulevard, Rm. 6-100
Honolulu, HI 96850
Telephone: 808-541-2850
Facsimile: 808-541-3752
Email: Rachel.Moriyama@usdoj.gov

*Attorneys for the United States*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
*Oct 01, 2019*
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF: | Mag. No. 19-01007 KSC |
| | **MEMORANDUM IN SUPPORT OF UNITED STATES' *EX PARTE* APPLICATION FOR ADMINISTRATIVE WARRANT FOR ENTRY AND ACCESS** |
| FACTORY STREET LEAD SITE HONOLULU, HAWAII | |

## MEMORANDUM IN SUPPORT OF UNITED STATES' *EX PARTE* APPLICATION FOR ADMINISTRATIVE WARRANT FOR ENTRY AND ACCESS

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has applied for a civil administrative warrant for entry and access pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §9604(e),  ("Proposed Warrant").  The Proposed Warrant would allow EPA and other authorized individuals to access the 900 block of Factory Street in Honolulu, Island of Oahu, Hawaii ("Property") for a period not to exceed ninety (90) days, for the purpose of removing lead contaminated soils located under the degrading roadway to abate the potential imminent and substantial endangerment posed by lead contamination to this densely populated neighborhood.  See Proposed Warrant submitted herewith.[1]

The Property was one of a number of parcels purchased by the Kalihi Taro and Land Company, Limited ("KTLC") in 1910.  Declaration of Amanda Pease dated September 24, 2019, ("*Pease Decl.*") at ¶ 11.  KTLC was dissolved in 1926 and, although certain other parcels were sold or transferred, the Property, itself,

---

[1] Upon obtaining access to the Property, EPA seeks access for the duration of 90 contiguous days.  EPA has requested that access be granted as soon as possible and is prepared to enter the Property by October 7, 2019.

was never subsequently acquired by any private or public entity.  *Id.*  Accordingly, the Property is abandoned.[2]  *Id.*  The United States' request is made *ex parte* because there is no entity from whom EPA can seek permission to enter and because the proposed removal activities are time critical.  *Id.* at ¶ 26; see also *In re Bunker Hill Co.,* 658 F.2d 1280, 1285 (9th Cir. 1981).

A.    **BACKGROUND**

The Property is part of the Factory Street Lead Site which is located between North King Street and Stanley Street and includes certain areas of private land bordering on Factory Street, ("Site").[3]  See Site Vicinity Map attached as Exhibit A to *Pease Decl."* at ¶ 3.  Factory Street is a busy side street in a dense, urban neighborhood and serves as a major corridor to North King Street, both for pedestrians and cars.  *Pease Decl.* at ¶ 4.  Schools, including five elementary schools, and parks are located within a half mile radius of the Site.  *Id.*

In the vicinity of the Site is the former location of a dental office, sign painting shop, Kalihi Fishing Supply, and a car battery rebuilder; all potential

_____

[2] To the extent access is required for staging, passage of vehicles or other removal-related purposes on other parts of the Site, the United States has obtained access by agreement with current property owners or has access on a public thoroughfare. *Pease Decl.* at ¶ 21.

[3] The Site, including that portion referred to herein as the "Property," is a facility, establishment, or other place or property: (A) where hazardous substances may have been generated, stored, treated, disposed of, or transported from; (B) where hazardous substances have been released; (C) where a release is threatened . . . ."

MEMORANDUM IN SUPPORT OF UNITED STATES' *EX PARTE* APPLICATION FOR
ADMINISTRATIVE WARRANT FOR ENTRY AND ACCESS

sources of lead contamination. *Id.* at ¶ 7.  Assessments by state and federal authorities have disclosed elevated lead concentrations in soils at various locations within the Property.  *Pease Decl*. at ¶ 6.  The assessments have shown that lead is present in surface soils at the Property at levels exceeding both the EPA Residential Screening Level and the Hawaii Department of Health ("HDOH") Environmental Action Level for unrestricted land use.  Based on the investigations, EPA and HDOH characterized the site as needing "No Further Action," in 1995 and 1996 because the presence of pavement on the street prevented residents from exposure to elevated levels of lead.  *Id.* at ¶ 8.

The asphalt, however, has fallen into disrepair.  See photographs attached to *Pease Decl*. at ¶ 9.  As a result of the crumbling asphalt, the soils beneath the road are visibly coming to the surface.  *Id*.  The road is no longer adequately protecting the community from potential harm from exposure to the lead in the soils.  *Id*. at ¶ 10.  EPA intends to dig out and properly dispose of approximately 12-18 inches of contaminated soils and then re-engineer and repave the roadway in order to provide the community with a permanent solution to the potential imminent and substantial endangerment posed by the contaminated soils being exposed through the crumbling roadway.  Id. at ¶ 13.  Removing the contaminated soils will prevent future exposures, even if the asphalt falls back into disrepair in the future.  *Id*.

---

*See* 42 U.S.C. Section 9604(e)(3)(A)-(C).

B.   **ARGUMENT**

   A.   **EPA Meets the Requirements for Obtaining a Warrant for Access Under Section 104(e) of CERCLA**

      1.   Legal Standard

The court may issue an *ex parte* administrative warrant where "probable cause" exists. *Marshall v. Barlows, Inc.,* 436 U.S. 307, 320 (1978). The probable cause standard for issuance of civil administrative warrants is less stringent than the criminal probable cause standard, and requires only a showing of "either specific evidence of an existing violation" or "reasonable legislative or administrative standards" for conducting a particular inspection. *Marshall*, 436 U.S. at 320. An affidavit is adequate to support a probable cause determination. *See Burkart v. Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1319-20 (7th Cir. 1980) (in an administrative probable cause determination, the court can assume that the information contained in the declaration of an agency compliance officer is true and accurate and can serve as the basis for a determination of probable cause); *National-Standard*, 685 F.Supp 1040, 1047 (N.D. Illinois 1988); *In re: Search Warrant*, 2004 WL 1368848 (D. Del, June 10, 2004) *3 fn 5. Courts have consistently recognized that EPA's entry authority under Section 104(e) of CERCLA is broad. *See*, e.g., *United States v. Fisher*, 864 F.2d 434, 437 (7th Cir. 1988); *New Jersey Dep't of Envtl. Prot. v. Briar Lake Dev.*, 736 F. Supp. 62, 67

(D.N.J. 1990) (state agency entitled to immediate access to property adjacent to landfill for purposes of completing cleanup of landfill), *aff'd*, 961 F.2d 210 (3d Cir. 1992); *United States v. Iron Mountain Mines, Inc.*, Civ. A. No. S-87-1189-MIS, 1987 WL 46792 (E.D. Cal. Sept. 18, 1987) (EPA has the right to access property to evaluate the need for response action, choose response actions, conduct response actions, or otherwise enforce CERCLA); *United States v. Dickerson*, 660 F. Supp. 227 (M.D. Ga. 1987), *aff'd* 834 F.2d 974 (11th Cir. 1987) (access granted to EPA for purposes of investigating, monitoring, sampling and conducting remedial action at drum storage site).

Pursuant to Section 104(e) of CERCLA, EPA must demonstrate that "there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance," 42 U.S.C. § 9604(e)(1), and that entry and access to the Site is needed to determine the need for response or the appropriate response or to effectuate a response action under CERCLA.  42 U.S.C. § 9604(e)(3).  EPA has met both of these standards.  See *Pease Decl.* at ¶ 12.

> 2.   Release or Threat of Release of a Hazardous Substance
>       Occurred

The history of the Site, environmental assessments by state and federal authorities, public health data, and personal observations by EPA's On Scene Coordinator for the Site provide robust support for EPA's reasonable belief that a

release or threat of a release of a hazardous substance exists at the Property.  *Id.* at ℙ 18.

There is robust evidence that the Site contains lead-contaminated soils. Pease *Decl.* at ℙℙ 6 - 9.  The Site is located in the vicinity of a number of businesses that used, and likely disposed of, lead into soils.  *Id.* at ℙ 7. Accordingly, the historic use of the property supports the belief that soils at the Property are contaminated by lead.  Indeed, sampling data documented elevated concentrations of lead in soils on the Property.  *Id*. at ℙ 6.  Thus, lead, a hazardous substance as that term is defined under Section 101 of CERCLA, 42 U.S.C. § 9601(14) has come to be located at the Property.  *Id*. at ℙ 16. EPA's sampling evidence confirms the presence of lead at the Site and this evidence alone is sufficient to establish the requirement to show a release or threatened release of a hazardous substance as provided by Section 104(e)(1).  See *id*. at ℙ 6.

Further, the lead in the soil is being released, or threatened to be released from beneath the crumbling roadway.  *Pease Decl.* at ℙ ℙ 9-10.  First, EPA's On Scene Coordinator personally observed the crumbling condition of the asphalt as recently as May, 2019.  *Id.*  The potholes and cracks were so significant that it was possible to see the dirt below.  *Id.*  In addition, state public health authorities have documented lead in the blood of children residing on Factory Street from the 1990s to as recently as 2019.  *Pease Decl.* at ℙ 17.   While the particular source of

the children's exposure to lead is not known, the presence of lead in their blood

may provide additional support for EPA's reasonable belief that a release or threat

of release has occurred.  *Id.* at ¶ 17.

### 3.   EPA Requires Access

There is no public or private owner of this abandoned property.  *Id.* at ¶ 11.

The State has requested that EPA step in to undertake the work of eliminating this

exposure pathway under its authority under CERCLA or otherwise. *Id.* at ¶ 5.

Under the standard for seeking a warrant under Section 104(e)(3), it is clear that

EPA requires access.  *See* CERCLA Section 104(e)(3)(D).

In order to address the contamination, EPA needs to undertake specific

activities on the Property.  *Pease Decl.* at ¶ 19.  The activities EPA intends to

undertake are itemized in the Proposed Warrant and they are all activities that fall

under the broad definition of response action.  *See* Section 101(25) and (23) of

CERCLA, 42 U.S.C. § 9601(25) and (23).  ("[R]esponse" means "remove,

removal, remedy, and remedial action."  "'[R]emove' or 'removal' means the

cleanup or removal of released hazardous substances from the environment, such

actions as may be necessary taken in the event of the threat of release of hazardous

substances into the environment, such actions as may be necessary to monitor,

assess, and evaluate the release or threat of release of hazardous substances, the

disposal of removed material, or the taking of such other actions as may be

necessary to prevent, minimize or mitigate damage to the public health or welfare or to the environment ,which may otherwise result from a release or threat of release.")  Thus, EPA requires access to effectuate a response action under the Statute.  *See* 42 U.S.C. § 9604(e)(3)(D).

EPA has prepared an Action Memorandum setting forth in detail the activities that will be needed to address the lead contaminated soils on the Property.  *See Pease Decl.* at ¶¶ 13-14.  In summary, to prevent exposing the community to any on-going threat of release of the lead on the Property, EPA will need to excavate and properly dispose of approximately 12-18 inches of contaminated soils, and re-engineer and re-pave the roadway.  *Id*. at ¶13. Authority for use of land other than the Property for activities such as staging, transportation, and storage of materials, has already been obtained through agreement or lease or is available because of public access on roadways in the area.  *Id.* at ¶ 21.  In addition to federal authorities, State and local authorities may be required to assist in the completion of the work.  *Id*. at ¶ 22.  If accompanying EPA for the purposes of working on the Property, State and local authorities may also need access for the limited purposes of performing this removal action.  *Id*.  In addition, during the work, it will be necessary for law enforcement including state and local officers as well as EPA's contractors to access the Property for the purpose of directing pedestrian and vehicular traffic, enforcing parking restrictions, and ensuring the

safety of those performing the work as well as that of the community. *Pease Decl.* at ⁋ 23.

**B.     *Ex Parte* Warrant is Proper in This Case**

It is appropriate for the United States to seek this Proposed Warrant following the procedure for *ex parte* relief because there is no owner who could grant permission or object to the petition and because the need for access is time critical. *See Pease Decl.* at ⁋ 19. See also, *In re Bunker Hill Co.,* 658 F.2d at 1285 (upholding EPA's authority under the CAA to obtain an *ex parte* warrant based on sufficient statutory authority).[3]

1.     Urgency

EPA has identified this remedial action as time critical. *Pease Decl.* at ⁋ 24. There is urgency to move forward with EPA's removal activities because it has become evident that the Property may pose an imminent and substantial threat to human health, welfare, and the environment. First, the Property is a publicly

---

[3] See *In re Alameda County Assessor's Parcel Nos. 537-801-2-4 and 537-850-9,* 672 F.Supp. 1278, 1287 (N.D.CA 1987) (Finding under Clean Water Act that EPA is not required to give advance notice of an application to seek an *ex parte* administrative search warrant); *Stoddard Lumber Co. v. Marshall,* 627 F.2d 984 (9th Cir. 1980) (*ex parte* warrant under OSHA); *In re Order Pursuant to Section 3013(d) RCRA,* 550 F.Supp. 1361 (W.D. Wash. 1982) (*ex parte* orders are "customary" under the closely related RCRA statute); *National-Standard* at 1048-49 (*ex parte* RCRA warrant); *In re Bunker Hill Co.,* 658 F.2d at 1285 (*ex parte* warrant under Clean Air Act); *In re Stanley Plating,* 637 F. Supp. 71, 73 (D. Conn.

accessible street where the public has contact with the uncontrolled hazardous substances. *Id*. at ¶ 10. Based on the most recent site visit, the Site is heavily trafficked and is surrounded by mixed use residential and commercial buildings. *Id*. Any person working, living, or traversing on or near Factory Street may be exposed to hazardous substances by coming into contact with lead-contaminated soils or dust. *Id*. Hazardous substances are located in soils under degrading concrete and paving at the Site and may be easily accessed by residents, workers, other visitors, and animals. *Id*. Lead has been identified in the blood of neighborhood children as recently as 2019 As the street is abandoned and not being maintained, the potential for exposure of the public to dangerous lead levels will increase as the street continues to degrade. *Id*. at ¶ 10.

In addition, it is important that this Warrant be issued quickly because the season is changing and work may be delayed or even stopped when rains and hurricanes start in the coming months. *Pease Decl.* at ¶ 25. EPA received the State's request with respect to this Property in June of 2019 and EPA has been working diligently to prepare for this undertaking to try to avoid the work spilling into the wet season in Oahu. *Id*.

    2.   <u>Notice and Public Outreach</u>

---

1986) (*ex parte* RCRA warrant).

If there were an owner who was responsible for the maintenance of the Property, the United States would likely have required that owner to address the contamination or would have negotiated a grant of access to perform the work itself. *Pease Decl.* at ¶ 26. Here, there is no owner, and therefore no entity to name in pleadings and no specific entity to object to the United States' request. *Id.* Accordingly, an *ex parte* process is appropriate.

Although there is no property owner to receive notice of the removal, EPA is taking steps to reach out to and to protect the health and safety of the community. See *Id. at* ¶ 27. Steps have included among other things, following all applicable health and safety regulations, hiring contractors to assist in directing traffic, taking steps to ensure that all trash and postal services will continue; and working with individuals whose parking will be affected. *Id.* In addition, EPA has held a public meeting, is preparing informational brochures for the community, is coordinating with state officials to provide an on-site information booth, and intends to go door-to-door to provide information and to answer questions. Finally, the On Scene Coordinator believes that, barring unforeseen circumstances, EPA and its contractors will be able to begin work immediately upon receipt of an executed warrant and that the work to be undertaken can be completed within 90 days. *Id.* at ¶ 28.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the United States respectfully requests that

the Court grant the Application of the United States and issue the Proposed

Warrant.

Respectfully Submitted,


Dated:  October 1, 2019          */s/ Elise S. Feldman*
                                 ELISE S. FELDMAN
                                 Environmental Enforcement Section
                                 Environment & Natural Resources Division
                                 United States Department of Justice
                                 301 Howard Street, Suite 1050
                                 San Francisco, California  94105

                                 KENJI M. PRICE
                                 United States Attorney
                                 District of Hawaii

                                 SYDNEY SPECTOR
                                 Assistant United States Attorney


OF COUNSEL:
Brianna Fairbanks, Assistant Regional Counsel
U.S. Environmental Protection Agency
75 Hawthorne St.
San Francisco, CA 94105